UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | Cr. No. 04-10031-WGY |
| | ) | |
| JAMES E. REID, | ) | |
| | ) | |
| Defendant | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REQUIRE
GOVERNMENT TO PAY THE COST OF COPYING DISCOVERY DOCUMENTS**

The United States of America opposes the defendant's motion to require the Government to pay the cost for duplication of discovery materials the Federal Defender Office wants to have copied.

Neither the facts nor the law, much less appropriate policy considerations, support the present request.

**BACKGROUND**

The defendant was indicted on February 5, 2004, charged with 1 count of mail fraud and 9 counts of wire fraud.  He was arrested on April 27, 2004, when he was entering the U.S. at Niagara Falls, NY.

The indictment is neither lengthy nor complicated.  Reid is charged with defrauding Firepond, a software development company where Reid was employed as a sales executive, by fabricating three sales contracts in order to collect his $150,000 salary and a bonus 9% commission for purportedly "closed" sales aggregating $4.8 million.

In this case, the Government offered essentially "open book"

discovery by inviting defense counsel to review the materials at the U.S. Attorney's Office.  Except for Jencks Act materials, the Government made all the documents and records possessed by the Government available for defense review in May/June 2004.  The disclosure extended well beyond that required by law.

Without presupposing what the defense might consider "material", the Government provided defense counsel a courtesy "walk through" of the documents to help counsel distinguish between those records likely to be of significance and those likely to bear no significance.  Having reviewed all the materials, defense counsel requested a copy of designated documents.  The Government provided the copies without charge to the defense.

In August 2004, the Government provided copies of a small number of additional documents found in the defendant's possession when he was arrested, again with no charge.

In November 2004, defense counsel informed the Government that it would be more convenient for the defense if all the documents in the Government's possession were copied. Counsel requested that "a copy of all of the other documents in your possession (i.e. the ones that you have not copied for me)" be duplicated, and further requested that the Government bear the cost of duplication.[1]  Government counsel responded that: (1) it

---

[1]  Defense letter to Government, November 9, 2004.

certainly would not be essential to copy virtually every document, and (2) at a minimum, defense counsel ought to further review the documents to identify those which it would be reasonable and necessary to copy, and (3) in any event the Government could not and would not bear the cost of such large-scale duplication.

On January 21, 2005, defense counsel and a paralegal visited the U.S. Attorney's Office. After a very brief review of the records, defense counsel reiterated the request that the U.S. Attorney's Office bear the costs for duplication of the entire volume of materials. Defense counsel advised that the cost would be $2,000 to $2,5000, subject to some mitigation for records already copied.

The Government again declined to bear the copy expenses.

## **ARGUMENT**

### THE CRIMINAL JUSTICE ACT

The Criminal Justice Act ("CJA"), Title 18, United States Code, Section 3006(A), provides for representation of indigent defendants by the Federal Defender Office[2] or by appointed private counsel,[3] with reimbursement for "expenses reasonably

---

[2]  See, §3006(A)(g)(2)(A).

[3]  See, §3006(A)(a)(3) instructing that "[p]rivate attorneys shall be appointed in a substantial portion of the cases."

incurred."[4]  Moreover, the CJA specifically provides for *ex parte* application by defense counsel to this Court for authorization to obtain "investigative, expert, or other services necessary for adequate representation" and for CJA payment of the expenses.[5] The Government is informed that it is the practice for the Federal Defender Office to maintain its own budget for paying expenses such as those sought in this case, and that defense counsel has not petitioned this Court for CJA funds in this case.

The defendant's motion is bottomed upon defense counsel's understanding that budgets of the Federal Defender Office and the Criminal Justice Act are "in crisis." Defense motion at ¶5. Unfortunately, the United States Attorney's Office for the District of Massachusetts is operating under a budget which was reduced 5.63% for FY 2005, resulting in significant budget deficits of its own, including being compelled to defer the hiring of approximately 8 Assistant U.S. Attorneys, together with other budget constraints to close an estimated shortfall of $970,000.[6]

In moving for an Order of this Court "to require the United States Attorney's Office rather than the Federal Defender Office"

---

[4]  See, §3006(A)(d)(1).

[5]  See, §3006(A)(e) and (f).

[6]  Source: Mr. Keenyn McFarlane, Budget Director, United States Attorney's Office.

4

[or CJA] to pay the expenses, the defendant simply seeks to have

this Court enter into budget(s) management and order that the

copying costs be shifted from the Federal Defender Office and/or

the CJA, to the budget deficit of the U.S. Attorney.

**RULE 16 AND LOCAL RULE 116**

Rule 16(a)(1)(E), Fed. R. Crim. P., provides:

Upon a defendant's request, the government must permit
the defendant to inspect and to copy or photograph books,
papers, documents, data, photographs, tangible objects,
buildings or places, or copies or portions of any of these
items, if the item is within the government's possession,
custody or control and:
(i)   the item is material to preparing the defense;
(ii)  the government intends to use the item in its
      case-in-chief at trial; or
(iii) the item was obtained from or belongs to the
      defendant.

Nothing in Rule 16 requires the Government to copy materials

for defendants, much less for *the Government* to pay the costs

where the defendant has determined what he wants to copy.  If

such matters had been intended, the criminal rules would have

provided for it as they do elsewhere.[7]  The Government is

---

[7]  For example, Rule 17(b) [Subpoena: Defendant Unable to
Pay] specifically provides that where the defendant makes a
satisfactory showing that he is unable to pay witness fees, and
that the witness is necessary to an adequate defense, the costs
shall be paid in the same manner as for government witnesses.
There is no similar provision for government duplication of
discovery materials, or for payment of copy costs.
Local Rule 116.4(A)(1) [Special Procedures For Tape
Recordings] requires the government to provide one copy of all
discoverable tape recordings in its possession "for examination
and review by the defendants parties."  In the special case where
a defendant, indigent or not, is in custody and thus not able to
examine and review the available copy, the government must make a

obligated only to "permit the defendant to inspect and to copy" the materials disclosed.[8]

Nor do the authorities cited by the defendant bear the weight of the propositions he asserts.  The defendant declares at ¶4 of his motion that "[u]nder Fed. R. Crim. P. 16, the Court possesses discretion to order the Government to pay the cost of copying discovery documents", citing United States v. Freedman, 688 F.2d 1364, 1366 (11th Cir. 1982).  In fact, the court in Freedman **reversed** where the district court had entered such an order:

> An examination of the express language contained in Rule 16 necessarily directs the conclusion that the rule does not require the government to copy or otherwise expend government funds in order to supply criminal defendants with their requested material.  Rule 16 gives the defendants access to the documents so that they may copy the documents should they desire to do so.  Although Rule 16 does not require the government to supply the defendants with discovery material, neither does it expressly prohibit the trial court from entering such an order pursuant to its discretionary authority.

Id. at 1366.  Where there is no express prohibition or provision, a court's authority to enter the kind of exceptional discovery

---

copy available for in-custody review.  L.R. 116.4(A)(3). Nonetheless, if a defendant, indigent or not, requests any additional copies they must be accomplished "at that defendant's expense."  L.R. 116.4(A)(2).

[8]  To the extent Rule 16 provides for district court discretion, for good cause, to "grant other appropriate relief", such authority is found in Rule 16(d)(1), which provides for limitation of discovery under protective and modifying orders, not for enlargement of defendants' Rule 16 discovery demands.

order sought in this case is not "unbridled" and is subject to
review under an abuse of discretion standard. Id.; see also
United States v. Tejada, 886 F.3d 483, (1st Cir. 1989).  The
court in Freedman held:

> To mandate that the government expend both its
> valuable time and funds in copying documents which
> the defendants have requested, when Rule 16 does not
> expressly require such, constitutes an abuse of the
> trial court's discretion and places an unjustifiable
> expense on the United States government.

Freedman, 688 F.2d at 1366.  See also, Premises Known As 225,
1468 and 1470 Statler Towers, 787 F.2d 796, 7987 (2d Cir.
1986)(applying same principle to motion to compel government to
pay costs for copying materials seized under search warrant).
In short, the actual holding in Freedman is precisely contrary to
the proposition for which it was cited by the defendant in this
case.

    The defendant also inflates caselaw when his motion at ¶4
declares that indigency alone is a sufficient fact for court
discretion to order that the government pay the defendant's
copying costs.[9]  To the contrary, in United States v. Green, 144

---

[9]  The nearest Freedman approached to such a proposition was
the appellate court's elaboration of it's holding by noting that
the defendant had not been prohibited from inspecting documents,
could demonstrate no undue hardship, and "should not be permitted
to transfer the cost of his discovery request to the government
especially where, as in the instant case, the defendants are not
indigent."  688 F.2d at 1366.  This comment certainly cannot be
read as rewriting Rule 16 for indigent defendants, or as
vitiating the application of Freedman's abuse of discretion
review to such an order.  See United States v. Jordan, 316 F.2d

F.R.D. 631 (W.D. New York 1992) the district court cited
Freedman to note that its discretion was limited and imposing
costs for photocopying upon the Government required "exceptional
circumstances" with indigency only one of numerous factors to be
considered. Id. at 637. The court reviewed the complexity of
the case, including the fact that 26 defendants were charged
among 73 counts involving an alleged drug and racketeering
conspiracy, where 16 of the defendants were being detained at a
variety of different facilities pending trial, and the evidence
involved 900 tape-recorded conversations from which the
government intended to use 300 at trial. Id. at 636-37. The
court further recognized Freedman as requiring that the court be
"guided by equitable principles such as reasonableness of the
cost, hardship or prejudice to one party or the other, and
efficient judicial disposition of criminal cases", thereby
placing indigency "[a]mong the circumstances to be considered,
along with the factors discussed above...." Id. at 637. Under

_____

1215, 1249 (11th Cir. 2003)(citing its earlier Freedman decision,
even where the defense requests that the government produce
discovery materials "the government is not obligated to make
copies of the items."). Cf., id. at n.72("[D]iscretion to
require the government to provide the defendant with copies of
discovery material, especially when defendant is indigent. . . is
not unbridled."). See also, Premises Known As Statler Towers,
787 F.2d at 798 (absent "exceptional circumstances" party seeking
copies of documents held by government must bear duplicating
costs; "In a discovery context, Rule 16's clear import is that
defendants, at least not indigent ones, must pay the cost of
copying documents legally held by the government.")

the "unique circumstances", the district court determined that the case was "one of unprecedented magnitude and complexity in this [W.D.N.Y.] district." Id. at 638.  None of the factors relied upon by the court to order the government to bear a portion of costs in Green is present in this case.  Reid is the sole defendant in a straightforward 10-count indictment which involves the type of documents routinely found in "typical" white collar prosecutions.  Nor does the defendant make a showing that the entirety of the documents are material to his defense.[10] There are no "exceptional circumstances" in this case, and to order a shift of costs would be an abuse of such discretion as may arguably apply for a court to enter such an exceptional discovery order.

Freedman, with 6 defendants under a 41-count indictment including RICO charges, involved a case far more complex than the

---

[10]    In Jordan, 316 F.3d at 1250-51 the court noted that to demand that the government produce general documents [i.e., not exculpatory or otherwise specifically required], the defendant must demonstrate that they are material to the preparation of his defense.  "A general description of the item will not suffice; neither will a conclusory argument that the requested item is material to the defense."  "[T]he defendant must 'show' 'more than that the [item] bears some abstract logical relationship to the issues in the case....  There must be some indication that the pretrial disclosure of the [item] would ... enable [] the defendant significantly to alter the quantum of proof in his favor.'"  In this case Reid makes no such showing of an entitlement to the documents, nor of materiality to preparation of his defense.  He nonetheless demands that the Government bear the cost of duplication for all the documents.

present case, and yet the Eleventh Circuit determined that the district court abused its discretion in ordering the Government to bear copying costs for the defendants.

United States v. Lino, 2001 WL 8356 (S.D.N.Y., Dec. 29, 2000) bears little resemblance to the present case. Lino was limited to the matter of converting over 1100 hours of audio surveillance tapes to digital format for a cost of $85,000. Lino, 2001 WL 8356 at *17. As noted above, duplication of audio tapes for indigent or non-indigent defendants who are in custody, like trial subpoenas for indigent defendants, is a matter of special rules and has no application in this case. Moreover, Lino, involved 23 defendants charged among 26 counts of racketeering offenses. To reach the conclusion that the Government must pay a portion of the costs for indigent defendants to obtain digital copies of the tapes disclosed, the district court specifically noted the "[e]xceptional circumstances . . . given the scope of the indictment and the sheer volume of discovery...." 2001 WL 8356 at *18.

Neither the applicable rules nor the caselaw supports a cost-shifting Order in a case such as this. The present case simply does not involve factors considered by the courts as predicates to consideration of shifting the expenses for copying.

**PRACTICE OF PRODUCTION IN UNRELATED CASES**

The defendant asserts, at ¶ 3 of his motion, that "[u]nder

10

consistent and uniform practice in this district, the USAO, at least in cases involving the Federal Defender Office, always pays the cost of copying at least one set of the documents in its possession." It is readily apparent that neither government counsel nor defense counsel has conducted a full survey of the matter, but that is certainly not the experience of the undersigned government counsel, nor is there such a "consistent and uniform practice" within the U.S. Attorney's Office. To the contrary, and without impugning the integrity or experience of defense counsel, some Assistant U.S. Attorneys have advised undersigned government counsel of instances where the Federal Defender Office agreed to bear expenses for documents they chose to have copied.

Indeed, when the Criminal Rules Committee of the District Court for the District of Massachusetts was invited to consider a suggestion by defense counsel that the court enact a local rule which would require that the Government absorb the cost of copying discovery materials for defendants represented by the Federal Defender or by CJA counsel, the matter was dropped

whereas other proposals were reviewed by the Committee for future

11

presentation to the District Court judges.[11]

**POLICY CONSIDERATIONS**

In addition to the factual and legal considerations, several appropriate policy considerations also caution against the Order sought by the defendant.

The defendant notes correctly that the Government provided, without cost, a copy of numerous documents in this case before the defendant requested that several times that amount of material [read, "everything else"] be copied at the Government's expense.  It is presently the case that in many instances, the Government makes courtesy copies of limited portions of discovery materials without cost to either appointed or retained counsel. In such cases, the assigned Assistant U.S. Attorney makes a determination that a particular request is reasonable and that the expense and/or inconvenience of duplication does not require creation of a formal copying procedure and concomitant billing mechanism.  If the result of having made such courtesy copies under an informal process is that the Government will, as in this case, face a motion noting the past production and moving for a court Order compelling the Government to bear additional cost for

---

[11]    In light of existing caselaw, a proposed rule making such Government expense mandatory would fail to take into account the equitable principles or predicate exceptional circumstances which are required to be considered, if at all, on a case-by-case.  Moreover, such a rule would clearly conflict with appropriate policy considerations.  <u>See</u> discussion below.

"everything else", the necessary future corollary will be for the Government to employ a formal procedure and invoice system from the beginning.

Moreover, as noted above, the Government has provided "open book" discovery in this case.  Without abandoning its rights under the rules governing discovery, the Government permits "open book" discovery in many cases in this District.  This Court and judges among other sessions in this District have commented favorably upon such a practice in individual cases.  Certainly, absent permissive  disclosure in an individual case, defendants are not entitled to review the entirety of materials in the government's possession.  See, e.g., Jordan, 316 F.3d at 1251-52 (defendant has no right to search through the government's files; prosecution is not required to deliver its entire file to the defense).  As also noted above, the U.S. Attorney's Office is operating under a significant budget shortfall which has produced real effects.  If the result of providing such "open book" disclosure of whatever material is in the Government's possession will be that the Government finds itself ordered to bear costs it would not otherwise have to bear for reproducing materials, the corollary effect would be that the Government is compelled to restrict its application of the more liberal discovery policy. This would inhibit, not support, the open dialogue and exchange of materials which are preferable and more likely to result in

13

effective and efficient disposition of criminal cases.   See
Green, 144 F.R.D. at 637(court discretion is "not unbridled" and
is guided by equitable principles, including efficient judicial
disposition of criminal cases); Freedman, 688 F.2d at 1367("[T]he
government should not be expected to shoulder an unreasonable
cost of effecting efficient judicial disposition of criminal
cases.").

Furthermore, where the Government provides the defendant
access to far more information and materials than the law
requires, the defendant cannot complain that the volume is too
great and thereby demand that the Government foot the bill for
reproduction.   In Jordan, the Government permitted defense
counsel to read, but not to copy, grand jury transcripts and FBI
interview reports, only to then have the defendants argue that
having permitted such review the Government ought to be ordered
by the court to produce hard copies of the same.   Jordan, 316
F.3d at 1229 and n. 19.   The district court agreed with the
Government that the materials were not discoverable, and the
Government had no obligation to produce copies.   Id. at 1229.
Whatever the permissive history of this case or in unrelated
criminal prosecutions, if compelled by the circumstances to
change its practices, the Government certainly cannot be estopped
from arguing that the statutes (e.g., 18 U.S.C. 3006A) or the
rules (e.g., Rule 16, L.R. 116] ought to be interpreted and

14

applied according to their terms.  <u>See</u> <u>United States v. Owens</u>,
933 F.Supp. 76 (D.MA., Young, C.J. 1996).

     As a final policy matter, the defendant in this case has not
made any showing that the defense has exhausted alternative means
before seeking an extraordinary Order from this Court to require
the U.S. Attorney "rather than the Federal Defender Office" to
bear the expenses.  For example, the defendant has not sought
funds by application to the CJA, as provided by 18 U.S.C. §3006A.
Nor does an "understanding" that Federal Defender Office and CJA
funding are "in crisis" constitute a showing that either account
in fact lacks the funds necessary in this case, much less that
this Court ought to attempt to resolve a "battle of the budgets."
Moreover, there is no articulation that the entire volume of
materials made available under "open book" disclosure in this
case is material to preparation of an adequate defense.  <u>See</u>,
<u>Jordan</u>, 316 F.3d at 1250-51 (conclusory statements do not
suffice, defendant must make showing of materiality).  Absent
such predicate showings, there is simply no basis for asking this
Court to take the next step of considering whether the case
otherwise involves "extraordinary circumstances."  Even if this
Court were to entertain such a review, the defendant fails to
make a showing that this is an exceptional case.  The defendant
must bear the burden of making the requisite showing before a
balancing of the "equity principles" can justify an Order

permitting the defendant to transfer the cost of his discovery request to the U.S. Attorney's Office.

WHEREFORE, the Government moves this Court to deny the defendant's motion.

Respectfully submitted this 16th day of February, 2005.

                              MICHAEL J. SULLIVAN
                              UNITED STATES ATTORNEY


                         By:  /s/ VICTOR A. WILD
                              VICTOR A. WILD
                              Assistant U.S. Attorney

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by hand upon Leo T. Sorokin, Esq., Office of Federal Public Defender, 408 Atlantic Avenue, Boston, MA., on this the 16TH day of February, 2005.


                              /s/ VICTOR A. WILD
                              VICTOR A. WILD
                              Assistant U.S. Attorney

16