```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA     )
                             )
          V.                 )    Cr. No. 04-10031-WGY
                             )
JAMES E. REID,               )
                             )
          Defendant          )
```

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO REQUIRE GOVERNMENT TO PAY THE COST OF TRAVEL AND ACCOMMODATION FOR DEPOSITIONS**

The United States of America opposes the defendant's motion to require the Government to pay the costs for a **second** Assistant Federal Defender to attend depositions in Montreal.

**BACKGROUND**

The indictment in this case is neither lengthy nor complicated. It is charged that while he was employed as the Vice President of Sales for a software development company named Firepond, Inc., located in Waltham, Massachusetts, Reid submitted three bogus contracts totaling $4.8 million in fictitious sales, all for the purpose of generating, in addition to his base salary of $150,000, over $434,000 in commissions for himself. These three contracts were the only sales "closed" by Reid during the time he was employed by Firepond from March 2001 to his termination in June 2002.

Two of the fraudulent contracts represent purported sales to domestic companies named Joy Mining and ABB. The largest contract, representing a sales value of $3.4 million, was purportedly between

Firepond and Bombardier, Inc., one of the largest corporations in Canada.  In fact, there had been neither discussions nor a contract for sale executed between Bombardier and Firepond for the purchase/sale of software.

In furtherance of his scheme, Reid submitted to Firepond the purported Bombardier contract containing a forged signature in the name of Pierre Beaudoin, the President and COO of Bombardier, Inc. When the CEO of Firepond sought verification of the Bombardier contract, Reid pretended to confirm the contract by causing a conference call among, Reid, the Firepond CEO, and someone falsely representing himself to be Pierre Lortie, the President of Bombardier's Transportation Division.

Defense counsel's hyperbole notwithstanding,[1] the testimony of Pierre Beaudoin is very simple and straightforward, to wit: Mr. Beaudoin did not participate in or approve of any contract between Bombardier and Firepond, there was no such contract entered into by Bombardier, and the signature in his name on the purported contract Reid submitted to Firepond is a forgery.  The testimony of Pierre

---

[1] Efforts to justify the defense motion include inflated declarations at pp. 2-3, among others, that the case involves "a large amount of documentary evidence and involves witnesses from across the country and Canada."  The documentary evidence in this case is actually significantly less than in most economic crimes cases.  The fact that some witnesses are located outside Massachusetts is not unusual and does not enlarge the fact that the number of witnesses is not exceptional, particularly where the testimony of most witnesses will be of the brief and uncomplicated type described herein as to Messrs. Beaudoin and Lortie.

Lortie is equally bare and uncomplicated, that is: there was no contract between Bombardier and Firepond, and Mr. Lortie did not participate in any conference call to confirm such a contract.[2]

The Government sought and obtained an Order of this Court for the taking of depositions of Messrs. Beaudoin and Lortie in Montreal for the reasons that, although they each wish to be cooperative with the Government, their respective business schedules do not permit them to be available at the scheduled trial in Boston -- particularly where Bombardier had virtually nothing to do with the matters alleged -- and as Canadian citizens they are not subject to subpoena by the Government to compel their presence. Pursuant to this Court's Order, the depositions are scheduled for September 11, 2006, at Montreal, Quebec, Canada.

The Government offered, without Court Order, to pay the expenses for Assistant Federal Defender Syrie Fried to fly to Montreal on September 10th, have hotel accommodations overnight to allow time to prepare with the defendant, attend the depositions at 1:00 pm and 3:00 pm on September 11th, and fly bact to Boston that evening.  The Government offered, also without Court Order, to pay the expenses for Reid to stay overnight on September 10th to prepare

---

[2] The witness testimony is sufficiently straightforward that in November 2005, before determining that Mr. Lortie would also be unavailable in Boston, the Government sought a stipulation from the defense regarding the testimony of Mr. Beaudoin.  See U.S. Attorney letter to counsel, November 23, 2005, copy filed with this Court.

3

for the depositions on September 11th. Moreover, in light of Reid's rehabilitation from open heart surgery last Fall, the Government agreed to additionally pay for Reid to stay in Montreal on the night of September 11th before returning to his home in Waterloo, Quebec, Canada.[3]

In light of all the circumstances, particularly the straightforward nature of the depositions, the Government declined the request of the Federal Defender's Office that the Government pay the expenses for Assistant Federal Defender Stylianus Sinnis to also attend the depositions in Montreal.

**ARGUMENT**

The Government has been more than reasonable in this case. The Government reiterates that it agreed, without court Order, to pay the described expenses on behalf of defendant Reid and his counsel, Syrie Fried. The Government did not seek to litigate the expense issue in this case, wanting to move matters forward and prioritize the timely completion of the depositions with the defendant's presence assured by providing for him to be in Montreal the day before the depositions. The Government offered to pay the expenses indicated, having in mind FRCrimP Rule 15(d), which

---

[3] The Government is likewise bearing the expenses for the court reporter from Apex Reporting Services. To save on the high cost of airline travel, the court reporter and Government personnel will be driving together to and from Montreal.

provides:

>   **Expenses**.  If the deposition was requested by the government, the court may – or if the defendant is unable to bear the deposition expenses, the court must – order the government to pay:
>
>   >   (1) any reasonable travel and subsistence expenses of the defendant and the defendant's attorney to attend the deposition....

The Government submits that it is an open question whether it is in fact obligated to pay such expenses where the defendant has appointed counsel with access to a budget for such matters.  It is not quibbling to suggest that the Rule 15 discussion of expenses applies where a defendant lacks funds from any source to reasonably cover deposition expenses, but does not apply, as here, where the defendant is not being asked to bear any expenses of his defense because the expenses are being borne by the Government, albeit through a fund apart from the U.S. Attorney's Office.  Nonetheless, the Government agreed to pay the expenses detailed above.

This is not the first instance *in this case* where the Federal Defender's Office has moved this Court for an Order requiring the Government to pay expenses the Government should not have to bear. See Defendant's Motion To Require Government To Pay the Cost of Copying Discovery Documents, Government Opposition To Motion, Government Supplemental Opposition, and this Court's February 17, 2006, Order Denying Motion.

As in the prior matter before this Court, the Government notes

that the Criminal Justice Act ("CJA"), Title 18, United States Code, Section 3006(A), provides for representation of indigent defendants by the Federal Defender Office[4] or by appointed private counsel,[5] with reimbursement for "expenses reasonably incurred."[6] Moreover, the CJA specifically provides for *ex parte* application by defense counsel to this Court for authorization to obtain "investigative, expert, or other services necessary for adequate representation" and for CJA payment of the expenses.[7]

Even if the circumstances in this instance warranted the attendance of a second Assistant Federal Defender at these depositions, and further that the expenses were reasonable in this case, in moving for an Order of this Court to require the United States Attorney's Office rather than the Federal Defender Office [or CJA] to pay the expenses, defense counsel again seek to have this Court enter into budget management and order that the expenses be shifted from the Federal Defender Office and/or the CJA, to the

---

[4] See, §3006(A)(g)(2)(A).

[5] See, §3006(A)(a)(3) instructing that "[p]rivate attorneys shall be appointed in a substantial portion of the cases."

[6] See, §3006(A)(d)(1).

[7] See, §3006(A)(e) and (f). The Government is informed that it is the practice of the Federal Defender Office to maintain its own budget for paying expenses necessary to the defense of appointed cases, and that defense counsel has not petitioned this Court for CJA funds in this case.

budget of the U.S. Attorney.[8]

The Government submits that even if a reading of "expenses" under Rule 15(d) applies where the Federal Defender has been appointed, the requested additional expenses in this case are not "reasonable." The defense correctly notes that "the Government has [voluntarily] agreed to pay the costs associated for reasonable travel and subsistence expenses for Mr. Reid and one of his appointed counsel to attend the depositions." Not to put too fine a point on it, but there is nothing in this case nor any showing by defense counsel to warrant expanding Rule 15 beyond its stated application to expenses "of the defendant and the defendant's attorney...." There is nothing extraordinary about this prosecution, much less the straightforward depositions presently at issue, to justify an Order by which the Government would be mandated to pay the considerable expenses for a second Assistant Federal Defender to attend these brief matters in Montreal.

In addition to the factual and legal considerations, appropriate policy considerations also caution against the Order sought by the Federal Defender's Office. If the result of having agreed to pay certain Federal Defender travel expenses under an informal process, without court order, is that the Government will, as in this case, face a motion for a court Order to compel the

---

[8] It is generally known that the U.S. Attorney's Office, like other criminal justice institutions, has suffered significant budget cuts.

Government to bear redundant costs, a future corollary for the U.S. Attorney's Office may well be that it must seek a formal determination whether Rule 15 applies in such a case,[9] and moreover that the Government should require a showing by defense counsel and a formal Order from the Court before the Government can pay even those expenses which might otherwise have been agreed upon. That would be an unfortunate, but potentially necessary, outcome which would inhibit, not support, effective and efficient disposition of criminal cases. See, e.g., United States v. Green, 144 F.R.D. 631, 637 (W.D.N.Y. 1992)(court discretion is "not unbridled" and is guided by equitable principles, including efficient judicial disposition of criminal cases); United States v. Freedman, 688 F.2d 1364, 1367 (11th cir. 1982)("[T]he government should not be expected to shoulder an unreasonable cost of effecting efficient judicial disposition of criminal cases.").[10]

WHEREFORE, the Government moves this Court to deny the defendant's motion.

---

[9] If compelled by the circumstances to change its past practices, the Government certainly cannot be estopped from arguing that the statutes (e.g., 18 U.S.C. 3006A) or the rules (e.g., Rule 15(d)] ought to be interpreted and applied according to their terms. See United States v. Owens, 933 F.Supp. 76 (D.MA., Young, C.J. 1996).

[10] Nor has the Federal Defender made a showing that, assuming it were truly so essential, the Federal Defender's Office could not bear the expense for second counsel from that office to attend.

8

Respectfully submitted this 31st day of August, 2006.

```
                              MICHAEL J. SULLIVAN
                              UNITED STATES ATTORNEY


                         By:  /s/ VICTOR A. WILD
_____   VICTOR A. WILD
                              Assistant U.S. Attorney
```