```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA      )
                              )
                              )
     v.                       )    CRIM. NO. 04-10031-WGY
                              )
                              )
JAMES REID                    )
```

MOTION IN LIMINE TO EXCLUDE ANTICIPATED 404(b) EVIDENCE

The defendant James Reid, through undersigned counsel, moves this Court to preclude the government from introducing evidence of other uncharged "bad acts". Though the government has not sought this Court's permission to introduce F.R.E. 404(b) evidence, it has announced its intention to call three witnesses whose testimony could only be relevant or admissible under F.R.E. 404(b). The witnesses are Paul Barber, Bally Boodram, and John Hiraoka. Defense counsel expect that these witnesses would testify about business activity engaged in by the defendant years after the conduct underlying the indictment in this case. These three witnesses have no connection to Firepond or any of the transactions laid out in the indictment. The defendant submits that their testimony is being offered only to show his bad character and a propensity on his part to engage in the fraudulent conduct charged in the

indictment. Moreover, to the extent their evidence might be marginally relevant to some legitimate issue in the case, that relevance is far outweighed by the prejudicial impact of the testimony; thus the testimony should be excluded under F.R.E. 403.

## ANTICIPATED TESTIMONY

Defense counsel expect that the witnesses mentioned above would testify to the following history. In 2004 and 2005, Paul Barber was the president of a Canadian software development company called Prophix. In the fall of 2004, Prophix received an unsolicited e-mail from Titan Software Sales offering its services. Barber responded to the e-mail and set up a meeting with James Reid, Titan Software's president. As a result of the meeting, Prophix entered into a contract with Reid and Titan in mid-November, 2004. Titan was to help Prophix sell its software to other manufacturing concerns; Titan would also evaluate Prophix's sales and marketing organization.

The relationship between Prophix and Reid evolved in such a way that in December 2004 Reid took an interim position with Prophix as head of its sales department. In March 2005 Reid became Prophix's Vice President of Sales. In February 2005 Reid told Prophix that he was working on a deal with a company called Epicor to purchase a Prophix

product. Barber would testify that in early March 2005 Reid produced a draft copy of a term sheet between Prophix and Epicor.

Barber would testify that in July 2005 Reid produced a document purporting to be a purchase order from Epicor. In the order, Epicor was buying $8.275 million of software licenses, services, and maintenance. Reid was the signatory on behalf of Prophix, and a John Hiraoka signed on behalf of Epicor. This dollar amount was large from Prophix's perspective. Barber would also testify that the Epicor deal did not seem to be moving forward and bearing fruit by the fall of 2005. A series of communications between Barber and other Prophix employees and employees of Epicor in October 2005 revealed to Barber that Epicor did not enter into any agreement to purchase goods or services from Prophix.

Bally Boodrum would testify that he was employed by Prophix during James Reid's tenure there, that he was familiar with the Epicor deal, and that he had communications with a employee of Epicor that caused him to believe that no deal between the two companies had been made. Finally, John Hiraoka would testify that he is an officer with Epicor, that he never had any business

3

dealings with James Reid or Prophix, and that he never signed a purchase order regarding Prophix.

### THE EVIDENCE OUTLINED ABOVE SHOULD BE EXCLUDED UNDER FEDERAL RULES OF EVIDENCE 403 AND 404(b)

The government has not advanced any theory of admissibility of the testimony sketched above under F.R.E. 404(b).

> To admit evidence of prior bad acts, a trial court must find that the evidence passes two tests. First, the evidence must have "special relevance" to an issue in the case, such as intent or knowledge, and must not include "bad character or propensity as a necessary link in the inferential chain." Second, under Rule 403, evidence that is specially relevant may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

United States v. Varoudakis, 233 F.3d 113, 118 (1st Cir. 2000), quoting United States v. Frankhauser, 80 F.3d 641, 648(1st Cir. 1996). It is difficult to fathom how the evidence outlined above, which concerns events that took place three to four years after the events charged in this indictment, events concerning business deals that have absolutely nothing to do with the events charged in the indictment, could be relevant to prove anything especially relevant to the charges here except the defendant's bad character and that he was acting in conformity with such bad character. Evidence of Reid's conduct in 2005 has no logical relevance to, and cannot shed any light on, Reid's motive, knowledge, or intent vis-à-vis Firepond in 2001 and

4

2002, except to support the impermissible inference that Reid must have been scamming earlier because he was scamming later.  The evidence the government seeks to introduce does not show the presence of a single common scheme: there is no commonality between the participants, except for Reid; the time span between the two episodes is quite long, undercutting any connection between them.  See, e.g., Varoudakis, supra, 233 F.3d at 119 (no common scheme shown to link two arsons committed two years apart; error to admit evidence of earlier arson).

Balanced against this is the undeniably prejudicial impact of the Prophix/Epicor evidence, and F.R.E. 403's provision that relevant evidence be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice."  In this case, the danger that a jury will misuse the Prophix/Epicor evidence about a fake sales agreement to conclude that Reid defrauded Firepond using the same method three years earlier is very high.  Moreover, the government has not demonstrated any special need for the Prophix evidence to prove the charges in the indictment.  Varoudakis, supra, 233 F.3d at 123-124.  For these reasons, the defendant requests that this motion be allowed and that the government be precluded from presenting evidence concerning Prophix and Epicor.

5

Respectfully submitted,

By his attorney,


/s/ Syrie D. Fried
Syrie D. Fried
  B.B.O. # 555815
Federal Defender Office
408 Atlantic Avenue
Boston, MA  02110
(617) 223-8061


CERTIFICATE OF SERVICE

I Syrie D. Fried do hereby certify that the foregoing motion has been filed electronically and will be served electronically on those parties identified on the Notice of Electronic Filing ("NEF") this 7th day of November, 2006.


/s/  Syrie D. Fried