UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA    )
                            )
         V.                 )    Cr. No. 04-10031-WGY
                            )
JAMES E. REID,              )
                            )
         Defendant          )

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE*
         TO EXCLUDE ANTICIPATED 404(b) EVIDENCE**

The Government opposes the defendant's motion to preclude certain matters which constitute admissible evidence pursuant to Rule 404(b), and which represent relevant conduct at sentencing. As bases for its opposition, the Government provides the following:

1.  Defendant Reid was indicted on February 5, 2004 and arrested on April 27, 2004, on charges that while employed by a Massachusetts software company (Firepond), he created and presented 3 fictitious contracts representing $4.8 in purported "sales", from which Reid was to receive $434,000 in commissions above his annual salary of $150,000, and that Reid collected $156,000 of the commissions before his scheme was exposed and he was terminated in May 2002.

2.  By letters dated July 13, 2004 and November 30, 2004, the Government detailed 7 separate incidents dating from 1980 to 2003, including conduct after Reid was terminated by Firepond, in which defendant Reid committed fraud on computer software companies in manners remarkably similar to the conduct charged in the indictment.

3.  The Government informed the defendant in those letters that the conduct constituted Rule 404(b) evidence which the Government may seek to admit at trial, and also constituted potential relevant conduct for sentencing purposes.

4. By letter dated December 1, 2005, the Government informed defense counsel that while he was on conditions of release in this case, defendant Reid had committed precisely the same conduct charged in the indictment in connection with his employment at a software company named PROPHIX from the Fall of 2004 to July 2005.  Specifically, defendant Reid submitted to PROPHIX a fictitious contract representing purported sales to a California company named Epicor, on which Reid was to be paid commissions.

5. The Government informed defense counsel that the conduct constituted Rule 404(b) evidence which the Government would seek to admit at trial, and that it constituted relevant conduct for sentencing purposes.

6. Under letters dated December 1, 2005 and December 5, 2005, the Government delivered to the defense the documents relating to the PROPHIX scheme, including statements and documents involving PROPHIX President Paul Barber, a PROPHIX employee Bally Boodram, and John Haraoka, Vice-President of Epicor, whose forged signature appears onthe contract.

7. This Court issued a warrant for the arrest of defendant Reid for violation of his conditions of release.

8. On December 5, 2005, before Magistrate Judge Bowler, an evidentiary hearing was held at which the relevant documents were admitted, Paul Barber testified at length, and the testimony of Bally Boodram was proffered by the Government.

As indicated by its witness list, and in conformity with its statements to the defense in December of 2005, the Government seeks to admit the testimony regarding the PROPHIX/Epicor matter pursuant to Rule 404(b), Federal Rules of Evidence.[1]  This matter involves precisely the type of *modus operandi* evidence intended to be

---

[1] In light of the PROPHIX/Epicor matter, the Government has determined it unlikely that it will present at this trial evidence of the seven previously disclosed matters.

admitted pursuant to Rule 404(b) to establish Reid's motive for submitting fraudulent contracts, intent on his part, his planning in the execution of the charged scheme, his knowledge concerning the validity of fictitious contracts, identity of Reid as the person involved, and the clear absence of mistake or accident on Reid's part in the submission of contracts charged as fraudulent in the indictment.

Such evidence is subject to a two-pronged test of admissibility.  First, the evidence must be specially probative of an issue in the case without including propensity as a necessary link in the inferential chain.  Second, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, in accord with Fed. R. Evid. 403. United States v. Van Horn, 277 F.3d 48, 57 (1st Cir. 2002).

The evidence regarding the PROPHIX/EPICOR matter and the defendant's attempt to use bogus contracts to collect salary and commissions is specially probative of the defendant's methods, motives, intent, knowledge, the absence of mistake, and the defendant's common scheme to defraud.  Rule 404(b)'s list of permissible purposes is not exhaustive. Any non-propensity purpose is sufficient. United States v. Lynn, 856 F.2d 430, 436, n.11 (1st Cir. 1988).  Here, the evidence is part and parcel in the defendant's common scheme to obtain employment as a "rain maker"

salesman for software companies in order to collect salary and commissions under fraudulent "sales" contracts.

Probative value is assessed by examining the remoteness in time and degree of similarity between the charged and uncharged conduct. Id. United States v. Varoudakis, 233 F.3d 113, 119 (1st Cir. 2000). In the present case, the charged and uncharged conduct occurred within close proximity, indeed while Reid was pending charges virtually indistinguishable from his new conduct. The defense has been given alpha-to-omega disclosure that the uncharged acts mirror those charged in the indictment, such that the defendant's motion precisely details Reid's conduct and the dates and witnesses involved. The charged and uncharged conduct are parallel in virtually every respect. Being closely related in time, character and relationship to the charged conduct, the evidence of the uncharged conduct passes the first prong of the Rule 404(b) test.

The uncharged conduct also passes the second prong of the Rule 404(b) test since its probative value outweighs the danger of unfair prejudice to the defendant. The fairness of prejudice is determined by the marginal value of the evidence to the case of its proponent. See Varoudakis, 233 F. 3d 122 ("The prejudice to an opponent can be said to be 'unfair' when the proponent of the evidence could prove the fact by other, non-prejudicial evidence." (quotation marks omitted)); United States v. Simon, 842 F.2d 552,

555 (1st Cir. 1988) (district court properly admitted Rule 404(b) evidence since "there was talk of insufficient government evidence at the time the court decided the question of admissibility").

Here, the evidence of the uncharged matter is vital to the Government's case. The evidence at trial will show that Reid went to great lengths to make his fraudulent Firepond contracts appear legitimate. Indeed, both before and after the supposed signings of each contract, Reid constructed an elaborate appearance of authenticity surrounding the purported "sales." Among other efforts, he caused numerous meetings and discussions to be scheduled involving Firepond and the purported purchasing companies, he created bogus email and phone calls to lend the appearance of authenticity to the matters, he caused teams of Firepond personnel to travel interstate and internationally under the guise of "implementation" meetings, and he stalled efforts by Firepond to collect on the purported contracts by creating false stories about who he had spoken to and meetings that were supposed to take place, all to stall the supposed "implementation date(s)." In short, he created a wealth of evidence for the appearance that the contracts were authentic and that any failure to perform under the contracts was the fault of others.

Where, as here, the evidence is of great marginal value to the United States' case, and there is little potential that it would elicit "an irrational reaction from the jury", its probative value

outweighs the potential for unfair prejudice. <u>United States v. Guyon</u>, 27 F.3d 723, 730 (1st Cir. 1994). The evidence thus passes the dual prongs of the Rule 404(b) test.

Finally, the uncharged evidence can be presented in a straightforward and timely manner. The jury will of necessity become familiar with software contract procedures and commission agreements through evidence of the charged offenses. Nothing in the PROPHIX/Epicor matter will require explanation of unusual terms or complex procedures. Nor will the presentation of the evidence consume an inordinate amount of time or create any jury confusion.

Admitting the evidence of uncharged conduct in this case is in accord with established First Circuit precedent. More specifically, the uncharged conduct here is readily distinguished from the Rule 404(b) disallowed in <u>Varoudakis</u>, relied upon by the defense. In <u>Varoudakis</u>, the uncharged car fire was not specially probative of the defendant's plan, knowledge, intent, or common scheme to defraud since it bore little resemblance to and occurred 16 months prior to the charged arson. <u>Id.</u> at 119. Here, the uncharged conduct is descriptively and temporally parallel with the charged conduct. Moreover, the First Circuit in <u>Varoudakis</u> determined that although the uncharged car fire evidence **was** specially probative of another issue in the case (the relationship between the co-conspirators), the considerable quantity of other evidence establishing that same point rendered the marginal value of the

6

evidence insignificant and thus it was outweighed by the potential for unfair prejudice. Id. at 123. In contrast, the web woven by Reid around the Firepond matters compels admission of the evidence here. The PROPHIX/Epicor evidence is vital to the government's case and the jury's assessment of the defendant's *modus operandi* in connection with his activities at Firepond, the intent with which he acted when he submitted signed contracts to Firepond, his knowledge as to whether the contracts were genuine, the knowledge with which he caused others to act in connection with purported "sales" of software, his overarching plan and the common scheme for which he is charged. The evidence will assist the jury in determining whether the defendant acted as the result of some mistaken belief or with guilty knowledge.

The present case is similar to Guyon, 27 F.3d 723. There, the defendant was charged with fraudulently obtaining a number of loans in the names of other individuals from the Bank of Boston. The government presented evidence of other loans not charged in the indictment that the defendant fraudulently obtained in a similar manner from other banks. The district court ruled that this evidence was specially probative of the defendant's intent, *modus operandi*, and common scheme. Id. at 729. The district court also ruled that the probative value of the evidence outweighed its potential for unfair prejudice. The First Circuit affirmed, noting the "striking similarity between the evidence of charged and

uncharged loans" and stating that this was "precisely the type of evidence that Fed. R. Evid. 404(b) permits in order to help prove [the defendant's] plan and intent." Id.

WHEREFORE, the Government further moves this Court to deny the defendant's motion.

Respectfully submitted this 7th day of November, 2006.

                MICHAEL J. SULLIVAN
                UNITED STATES ATTORNEY

By: /s/ Victor A. Wild
     VICTOR A. WILD
     Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served upon Syrie Fried, Esq., Office of Federal Public Defender, 408 Atlantic Avenue, Boston, MA., on this the 7th day of November, 2006.

     /s/ Victor A. Wild
     VICTOR A. WILD
     Assistant U.S. Attorney